UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Case No. 04-114-08 (RBW) |
| ) | |
| HUGHES MANUEL ) | UNDER SEAL |
| RODRIGUEZ-FUENTES (8) ) | |
| a.k.a. "Commandante Barbie" ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION
AND PROPOSED ORDER**

The United States respectfully moves this court to order the pretrial detention of defendants Hughes Manuel Rodriguez-Fuentes (Rodriguez) pursuant to 18 U.S.C. § 3142(e). As set forth herein, there is a statutory presumption in favor of detention because the defendant is charged with, inter alia, Conspiracy to Manufacture and Distribute for the Purpose of Unlawful Importation Into the United States Five Kilograms or More of Cocaine, in violation of 21 U.S.C. § 959 and 960, which is an offense that carries a maximum penalty of more than ten years imprisonment. Moreover, the government believes the defendant has no ties to the United States; the government believes the defendant has the ability to flee and would flee if released from custody; and the government believes the defendant would pose a danger to the community unless he is detained.

I.   **Factual Background**

The charges in this case arise from evidence obtained during an investigation which revealed that Rodriguez is a member of an organization known as United Self-Defense Forces of

Colombia (AUC)[1]. The organization controls every aspect of drug trafficking on the northern coast of Colombia in the Departments of Magdalena and Guajira. The evidence against Rodriguez consists of seizures of cocaine, surveillance, Colombian court-authorized intercepted telephone conversations in Colombia, and cooperating and/or government witnesses. The evidence from the investigation shows that beginning sometime in 1996 and continuing up until at least June 2004, Rodriguez and Rodrigo Tovar-Pupo (Tovar), a.k.a. "Jorge 40," a.k.a. "Papa Tovar," a leader of the AUC (United Self-Defense Forces of Colombia, a State Department-designated Foreign Terrorist Organization), along with others, were members of an organization that would oversee, provide security, and participate in the manufacturing and transportation of cocaine intended for the United States. After manufacturing the cocaine in jungle laboratories the cocaine shipments, in multi-ton quantities, would be transported onboard maritime vessels known as "go-fast" boats. The cocaine was transported from Colombia to various islands in the Caribbean, Central America and Mexico and then to the United States.

The cocaine shipments, which are transported by truck from the laboratory locations in the nearby Sierra Nevada Mountains, are loaded into "go fast" boats or *lanchas rapidas*. The "go fast" boats are specifically designed to hold a ton or more of the cocaine at a time. Moreover, these boats are typically outfitted with two to four high performance outboard engines each, enabling the boats to travel long distances at relatively high speeds, even when fully loaded. The boats leave their loading locations along the northern coast of Colombia for offloading locations in Carribean, Central America and Mexico. At the offloading locations the cocaine shipments are received by other drug trafficking organizations and transported into the United States. Upon

---

[1] On September 10, 2001, the U.S. Department of State designated the AUC as a Foreign Terrorist Organization under U.S. law.

the sale of the cocaine the proceeds, in United States dollars, would then be transported or transmitted back to the drug trafficking organizations, who participated in the transportation of the cocaine. Ultimately, the proceeds would make their way back to the AUC.

Rodriguez worked with and on behalf of Tovar who led the organization and ran its operations from a location near Valledupar, Colombia. Tovar manufactured multi-ton quantities of cocaine in the north coast area of Colombia near the city of Santa Marta. Rodriguez was in charge of many of the financial aspects of the AUC's drug trafficking activities. Rodriguez was responsible for coordinating the repatriation of drug proceeds from the United States to Barranquilla, Colombia. Rodriguez also arranged for drug proceeds to be funneled into numerous bank accounts in Colombia and invested in real estate in the name of straw owners known as "testaferros."

Furthermore, the government has determined that Rodriguez was wanted in Colombia on criminal charges, which include a criminal charge of aggravated homicide and, according to his defense counsel, has resolved those charges and was convicted for aiding the AUC.

## II.     Legal Analysis

The federal bail statute authorizes a defendant's pretrial detention when no "condition or combination of conditions will reasonably assure the appearance of the person . . . and the safety of any other person and the community." 18 U.S.C. § 3142(e). The statute further provides that there is a rebuttable presumption that the defendant should be detained if there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act, 18 U.S.C. § 3142(e).

The existence of the indictment in this case establishes probable cause as a matter of law. See e.g., United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990). Moreover, the

Government is permitted to proceed by proffer to establish other facts relevant to the bail decision. United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996).

Several other factors in the detention statute also support the Government's request for pretrial detention. First the nature and circumstances of the offense are compelling. 18 U.S.C. § 3142(g)(1). Second, the weight of the evidence against the defendant is substantial consisting of seizures of cocaine, surveillance, Colombian court-authorized intercepted telephone conversations in Colombia, and cooperating and/or government witnesses. 18 U.S.C. § 3142(g)(2). Third, the fact that the defendant is a Colombian citizen with no known ties to the United States argues in favor of his detention pending trial. 18 U.S.C. § 3142(g)(3)(A). The defendant did voluntarily surrender to the United States government. However, in 2004 the government sent to the Colombian government a provisional arrest request, based upon the arrest warrant in this case, which the Colombian government agreed to act upon and seek the defendant's arrest. Also, during 2004, the Colombian government issued its "capture order" or arrest warrant, based upon criminal charges, for the defendant. From 2004, until his very recent decision to surrender and be arrested, which occurred on February 1, 2008, the defendant was aware of the arrest warrants and for a significant period of time sought to avoid being arrested.

Several courts have ordered pretrial detention of foreign defendants without any contacts to the United States. E.g., United States v. Vargas, 804 F.2d 157 (1st Cir. 1986) (Chilean defendant in drug importation case who had no family ties to U.S. was properly detained when no conditions or combination of conditions would reasonably assure his appearance at trial); United States v. Geerts, 629 F.Supp. 830 (E.D. Pa. 1985) (defendant was citizen of Netherlands who faced possibility of approximately fifty years imprisonment on customs related charges and had no significant ties to United States; he thus presented a serious risk of flight which justified

pretrial detention).

Finally, the defendant constitutes a clear and present danger to the community. The federal courts have recognized that drug traffickers, particularly those in positions of authority, are likely to continue engaging in drug related activities if released on bail and thus, constitute a danger to the community. Furthermore, the defendant is a member of the AUC, an organization recognized by the United States as a terrorist organization. See United States v. Knight, 636 F.Supp. 1462 (S.D. Fla. 1986). Accord United States v. Creekmore, 1997 W.L. 732435 (D.D.C. 1997)(Facciola, J.).

### III.     Conclusion

For all of the foregoing reasons, the Government respectfully requests that the motion to detain the defendant without a bond pending trial be granted.

Dated: February 4, 2008

        Respectfully submitted

        KEN BLANCO, Chief
        Narcotics and Dangerous Drug Section

        _____
        Patrick H. Hearn
        Trial Attorney
        Narcotics and Dangerous Drug Section
        U.S. Department of Justice
        1400 New York Avenue, N.W.
        Washington, D.C.  20005
        (202) 305-7606
        patrick.hearn@usdoj.gov